**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE TRUSTEES OF PRINCETON UNIVERSITY, <br> Princeton, New Jersey 08544 <br>            Plaintiff, <br><br>      v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION, <br> 400 Maryland Avenue, SW <br> Washington, DC 20202, <br><br> and <br><br> UNITED STATES DEPARTMENT OF EDUCATION, OFFICE FOR CIVIL RIGHTS, <br> 32 Old Slip, 26th Floor <br> New York, NY 10005, <br><br>          Defendants. | Civil Action No. _____ |

**COMPLAINT**

Plaintiff The Trustees of Princeton University (the "University"), by and through its attorneys, hereby complains against Defendants United States Department of Education (the "Department"), and its sub-agency the United States Department of Education, Office for Civil Rights ("OCR"), as follows:

**INTRODUCTION**

1.     The University brings this "reverse FOIA" action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706, the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Trade Secrets Act, 18 U.S.C. § 1905, to prevent the disclosure of certain confidential and

commercially sensitive documents and information relating to the University's undergraduate admissions program submitted to OCR in the course of an OCR compliance review. These materials fall generally into two categories: (1) documents and information about undergraduate applicants to the University ("Applicant Documents and Information"), and (2) documents and information about the University's proprietary admissions processes ("Admissions Documents and Information"). The University does not object to OCR producing documents that OCR itself generated in the course of its compliance review, to the extent OCR generated documents do not incorporate or quote those documents the University is seeking to protect.

2.      The materials at issue are the subject of a pending FOIA request, Department of Education FOIA Request Number 16-00645-F (the "FOIA Request"), and accompanying suit to compel disclosure, *Students for Fair Admissions, Inc. v. U.S. Department of Education*, No. 1:16-cv-02154-TSC (D.D.C.) (the "FOIA Action"). In that case, the plaintiff is seeking an order directing the Department to produce "all documents concerning the investigation of Princeton University in [OCR] Case Number 02-08-6002," which includes the Applicant Documents and Information and Admissions Documents and Information.

3.      The Applicant Documents and Information and Admissions Documents and Information are composed of sensitive applicant and admissions information and data that the University disclosed to OCR in response to specific requests by OCR during the compliance review, in good faith and in a spirit of voluntary cooperation to assist OCR. These materials include, but are not limited to, specific applicants' admission files, highly sensitive data about applicants that was requested by OCR (and assembled by the University solely for the purpose of responding to OCR's request), information about how the University evaluates applicants for admission, and information about how the University conducts its admissions program. Moreover,

before providing any materials to OCR in the compliance review, the University specifically asked OCR how OCR would respond to a FOIA request for these materials, and received assurance from OCR that it would adequately protect the rights and interests of both the applicants and the University.

4. The University has at all times maintained that the Applicant Documents and Information and Admissions Documents and Information are exempt from disclosure pursuant to FOIA Exemption 4, which exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). To that end, each of the documents the University seeks to withhold from release was designated and marked, ***"Confidential, Private, Personal and Proprietary – Exempt from Mandatory Disclosure Under FOIA"*** at the time it was produced to OCR. At no time during the compliance review did OCR object to or question these designations.

5. For purposes of FOIA, the activities disclosed by these materials are "commercial" pursuant to the term's ordinary meaning. These materials contain confidential information concerning the University's consideration of admissions applications, the structure of the University's admissions program, its process and criteria for making admissions decisions, and the nature and relative success of its recruiting initiatives. If disclosed, these materials would reveal core aspects of the University's applicant pool, admissions, and recruiting programs, all of which are evaluated and conducted within a highly competitive market for applications and enrollments. As explained below, disclosure of the materials would put the University at a substantial competitive disadvantage to identify, evaluate, and enroll prospective students, as well as potentially discourage applicants from applying to the University in the future if they have concerns about the confidentiality of the materials they submit.

6.     Information exempt from disclosure under FOIA Exemption 4 generally is also protected from disclosure by the Trade Secrets Act, 18 U.S.C. § 1905. *See, e.g.*, *Bartholdi Cable Co. v. FCC*, 114 F.3d 274, 281 (D.C. Cir. 1997). The Applicant Documents and Information and Admissions Documents and Information fall within the protections of the Trade Secrets Act for the same reasons the material is exempt from disclosure under FOIA Exemption 4.

7.     The Department has represented to the University that it will redact some but not all categories of applicant-specific information contained in the Applicant Documents and Information. As such, the Department's proposed disclosure would reveal personally identifiable applicant information. The University has maintained that *all* personally identifying information contained in its Applicant Documents and Information and Admissions Documents and Information is exempt from disclosure under FOIA Exemptions 6 and 7(C), which exempt from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), and "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C). The "law enforcement purposes" referenced by Exemption 7 include administrative or regulatory proceedings such as those conducted by OCR. Accordingly, consistent with FOIA Exemptions 6 and 7(C), the Applicant Documents and Information containing personally identifiable information must be fully redacted before any disclosure.

8.     The Applicant Documents and Information also contain personal information about individual applicants to the University the disclosure of which would violate the Privacy Act of 1974, 5 U.S.C. § 552a.

9.      The University brings this action for permanent injunctive and declaratory relief under the Administrative Procedure Act to set aside the Department's and OCR's final decision to disclose the Applicant Documents and Information and Admissions Documents and Information as arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. In the alternative, the Court should remand the matter to the Department and OCR for further agency proceedings.

## VENUE AND JURISDICTION

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, including the Freedom of Information Act, 5 U.S.C. § 552; the judicial review provisions of the Administrative Procedures Act, 5 U.S.C. §§ 701-706; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

11.     Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e).

## PARTIES

12.     The University is a private, non-profit educational institution with its principal place of business at Princeton University, Princeton, New Jersey 08544. The University is a "person" within the meaning of 5 U.S.C. § 551(2).

13.     The Department of Education is an "agency" within the meaning of 5 U.S.C. § 552(f). The Department of Education has possession and control over the University's Applicant Documents and Information and Admissions Documents and Information as identified in this Complaint.

14.     The Department of Education, Office for Civil Rights is a sub-agency of the Department of Education. OCR has possession and control over the University's Applicant

Documents and Information and Admissions Documents and Information as identified in this Complaint.

## FACTUAL ALLEGATIONS

15.     The University is a private, non-profit educational institution that advances learning through scholarship, research, and teaching, with an emphasis on undergraduate and doctoral education, and with a commitment to serve the nation and the world.

16.     Every year, the University accepts applications for admission to its undergraduate program from both domestic and international students who have completed or are soon to complete secondary education programs. Applicants to the University's undergraduate program submit a packet of application materials including, but not limited to, information about their academic and nonacademic performance in high school and personal essays. Submitted separately, and also included in candidates' application files, are standardized test scores, recommendations from high school teachers and guidance counselors, and evaluations by University alumni who interview candidates for admission.

17.     Every year, the University expends considerable time and resources recruiting a varied mix of high-achieving students from diverse backgrounds to create an exceptional learning community for the incoming undergraduate class. The University works both nationally and internationally to invite students to apply for admission to the University and, if accepted for admission, to matriculate with that year's incoming undergraduate class. Such recruitment is a highly competitive endeavor; specifically, the University competes against the world's most selective colleges and universities to attract applications from, and to enroll, the highest-performing and most talented students. Success in such recruiting is critical to the University's core academic mission.

18.     Undergraduate admission to the University is highly competitive. For the University's graduating class of 2020 (matriculating in the fall of 2016), 1,911 applicants were admitted out of 29,303 total applicants, for an admissions rate of 6.5 percent.[1]

19.     The University competes with other highly selective colleges and universities to obtain an applicant's enrollment at the school. *See, e.g.*, *Lee v. Life Ins. Co. of N. Am.*, 23 F.3d 14, 17 (1st Cir. 1994) ("[A university] competes for new undergraduate and graduate students on a regional and national level with dozens of universities and colleges."). For the graduating class of 2020, 1,312 of the 1,911 admitted applicants enrolled in the University in the fall of 2016, for an applicant yield rate of 68.6%.[2]

20.     In 2015-16, the University had a total operating budget of $1.78 billion dollars, and in 2016-17 is projected to have a total operating budget of $1.91 billion dollars. An undergraduate who did not receive financial aid paid approximately $63,690 to study at the University in 2016-17, of which $45,320 constituted tuition; approximately sixty percent of undergraduates received some amount of financial aid to assist them in meeting these costs.

OCR Case Number 02-08-6002 & the Materials at Issue

21.     On January 22, 2008, OCR began a compliance review of the University's consideration of race and national origin in the admissions process. The review began after OCR received a complaint against the University alleging that the University had discriminated against the complainant on the basis of race and national origin in the admissions process. The individual complaint and the compliance review were investigated by OCR in tandem in OCR Case Number 02-08-6002.

---

[1] *See* Princeton University, Statistics for Applicants to the Class of 2020, *available at* https://admission.princeton.edu/how-apply/admission-statistics (last visited Mar. 16, 2017).

[2] *See supra* n.1.

22.     On September 9, 2015, OCR concluded its investigation of Case Number 02-08-6002, finding that there was no evidence that the University engaged in discrimination against the complainant specifically, or Asian applicants generally.

23.     In connection with its investigation of Case Number 02-08-6002, OCR submitted to the University a number of requests for documents and information about the University's admissions program and activities, demographic and descriptive information about applicants to and students at the University, and narrative responses about the University's admissions program.

24.     In response to OCR's document and information requests, the University submitted to OCR a number of documents detailing the University's proprietary admissions policies and practices (the "Admissions Documents and Information"). These materials included admissions application evaluation materials and guidance, internal guidebooks and file preparation materials, and other documents typically subject to confidentiality restrictions within the University's Admission Office. The University also created and submitted to OCR certain narrative responses to questions posed by OCR concerning its admissions program. Those responses included detailed information about specific applicants and their families.

25.     In response to OCR's document and information requests, the University also voluntarily compiled and produced to OCR information about individual applicants to the University (the "Applicant Documents and Information"). These productions included certain individuals' application packets for admission, and data produced in forms in which it would not have otherwise existed, for example, spreadsheets containing information requested by OCR about individual applicants to the University. This information was compiled for no other reason than to respond to OCR's specific inquiries.

26.     The University's document and information productions, and narrative responses to OCR questions, as described in Paragraphs 23-25 (collectively, the Applicant Documents and Information and Admissions Documents and Information), are all of a type that the University keeps highly confidential. Indeed, there are only certain designated individuals within the Admission Office with access to these materials, and each and every such individual is required to sign a non-disclosure agreement. In addition to the information generated directly by prospective students, who expect the University to hold their information in strict confidence, the relevant data and information—including historical data—is used continuously by the University to assess the effectiveness of its admissions program and the need for adjustments to enhance the University's admissions program, including its competitive position in the admissions market.

27.     Taken separately and together, the Applicant Documents and Information and Admissions Documents and Information reveal commercially sensitive information that is kept highly confidential by the University, and would cause substantial competitive harm to the University if disclosed. Specifically, disclosure of these materials would:

a.  Permit applicants and their advisers who become aware of these materials to tailor applications to what they would perceive to be the admissions priorities and preferences of the University. These applicants (as distinct from other applicants) would use the disclosed materials to create applications that they believed fit what the University was looking for in admitted students. The University's ability to see applicants' true records and promise and make fair comparisons would be substantially hampered by this tailoring of applications to the University's perceived criteria for admissions. This, in turn, would substantially impair the University's ability to identify, recruit, admit, and enroll the strongest candidates

each year, to its competitive disadvantage as compared with other colleges and universities.

b.  Permit other colleges and universities with which the University competes to admit and enroll students to utilize the University's confidential admissions information and processes. The Applicant Documents and Information and the Admissions Documents and Information reveal the University's strategies and methods to identify, recruit, and enroll the strongest candidates for admission. Disclosure of this information would allow colleges and universities with whom the University competes for students to utilize these materials to place the University at a substantial competitive disadvantage.

c.  Undermine the University's ability to attract and enroll the strongest applicants. Applicants reasonably expect that their admissions materials and personal information will be kept in strict confidence by the University. Top-tier students confronted with the potential release of the information that they include in an application could be deterred from applying, and could be less likely to be forthcoming in their applications, inhibiting the University's ability to identify, recruit, and enroll such students. Other colleges and universities that have not been in the position of cooperating in good faith with an OCR investigation would not be placed at a similar competitive disadvantage.

28.   On September 9, 2015, Timothy C.J. Blanchard of OCR sent a letter to University President Christopher Eisgruber detailing OCR's conclusion that there was insufficient evidence to support the allegations of racial and national origin discrimination made by the complainant in Case No. 02-08-6002. The September 9, 2015 letter concluded OCR's compliance review.

FOIA Request Number 16-00645-F

29.     On January 13, 2016, OCR received a request under the Freedom of Information Act for "all documents concerning the investigation" of the University in connection with OCR Case Number 02-08-6002, which was numbered FOIA Request No. 16-00645-F (the FOIA Request). The documents requested included the Applicant Documents and Information and Admissions Documents and Information.

30.     On October 27, 2016, the Requestor filed a lawsuit in the United States District Court for the District of Columbia seeking to compel disclosure of the materials identified in its FOIA request. That case has been docketed as *Students for Fair Admissions, Inc. v. U.S. Department of Education*, No. 1:16-cv-02154-TSC (D.D.C.) (the FOIA Action). A copy of the operative complaint obtained from the Court's CM/ECF system is attached as Exhibit A.

31.     On December 1, 2016, John F. Carroll, Program Manager, OCR, sent a letter to University President Christopher Eisgruber, copying University Counsel Sankar Suryanarayan and Requestor's Counsel John Michael Connelly, informing the University that OCR had received the FOIA Request and that the FOIA Action had been filed. The December 1, 2016 letter further informed the University that OCR was providing the University with an opportunity to object to the disclosure of the documents submitted to OCR in the course of its investigation of Case No. 02-08-6002, and identifying the documents at issue. A copy of the December 1, 2016 letter is attached as Exhibit B.

32.     On December 10, 2016, OCR set a December 23, 2016 deadline for the University to submit a written statement detailing its objections to disclosure.

33.     On December 23, 2016, University Counsel Sankar Suryanarayan submitted via email, on behalf of the University, a letter response addressed to OCR Program Manager John F.

Carroll, detailing the University's objections to the Department's disclosure pursuant to FOIA of certain documents that the University submitted to OCR in the course of OCR Case Number 02-08-6002. The December 23, 2016 letter included objections to the Department's release of certain documents identified in its December 1, 2016 letter on the basis of FOIA Exemptions 4, 6, and 7(C). *See* 5 U.S.C. § 552(b)(4), (b)(6), & (b)(7)(C).

34.     On March 1, 2017, OCR Program Manager John F. Carroll sent a response to the University's December 23, 2016 letter to University Counsel Sankar Suryanarayan by email. The Department's March 1, 2017 letter stated that, upon consideration of the University's December 23, 2016 letter, OCR "has determined that Exemption 4 does not apply to any of the materials that the University has produced to OCR in Case Number 02-08-6002." The letter provided no substantive reasons for this determination. For instance, it did not explain what factors were considered, did not dispute the University's position regarding the confidentiality of the information at issue, nor did it include any findings at all regarding the likely harm to the University from disclosure. The Department solely recounted the procedural history and stated in a single sentence that after considering the University's arguments, it did not consider Exemption 4 to apply. With respect to the University's request that certain information be withheld pursuant to FOIA Exemptions 6 and 7(C), the Department stated that it would redact applicants' personally identifying information and thus did not need to apply those exemptions. A copy of the March 1, 2017 letter is attached as Exhibit C. The University subsequently learned that the Department will redact substantial but not all categories of applicant-specific information.  On information and belief, the Department and OCR have not obtained the prior written consent of the individuals to whom the Applicant Documents and Information pertain to release any applicant-specific information.

35.     OCR's March 1, 2017 letter constituted a "final agency action" within the meaning of 5 U.S.C. § 704.

## COUNT I – VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

36.     The University repeats and incorporates herein by reference the allegations of Paragraphs 1 through 35.

37.     The Applicant Documents and Information and Admissions Documents and Information that the Department intends to disclose in connection with FOIA Request Number 16-00645-F and Case Number No. 1:16-cv-02154-TSC (D.D.C.) constitute "commercial . . . information obtained from a person [that is] privileged or confidential" within the meaning of FOIA Exemption 4, and therefore exempt from disclosure.

38.     The Applicant Documents and Information and Admissions Documents and Information that the Department and OCR intend to disclose are highly confidential to the University.

39.     Disclosure of the Applicant Documents and Information and Admissions Documents and Information would cause substantial competitive harm to the University.

40.     Disclosure of the materials would violate the Trade Secrets Act, 18 U.S.C. § 1905.

41.     The Applicant Documents also contain private information about individual applicants to the University the disclosure of which would violate the Privacy Act of 1974, 5 U.S.C. § 552a and for which disclosure is not authorized pursuant to FOIA Exemptions 6 and 7(c)

42.     The Department's and OCR's conclusion that the documents and information are not exempt from disclosure is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2).

## REQUEST FOR DECLARATORY JUDGMENT

43.     The University repeats and incorporates herein by reference the allegations of Paragraphs 1 through 35.

44.     Because the Applicant Documents and Information and Admissions Documents and Information are exempt from disclosure under FOIA Exemption 4, such disclosure would violate the Trade Secrets Act.  Likewise, the Applicant Documents and Information are exempt from disclosure under FOIA Exemptions 6 and 7(C), and such disclosure would violate the Privacy Act.  Accordingly, the Department's decision to disclose the material is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2), the Court should declare that:

   a.   The Applicant Documents and Information and Admissions Documents and Information are exempted from Disclosure under FOIA Exemption 4;

   b.   The Applicant Documents and Information are exempted from Disclosure under FOIA Exemptions 6 and 7(C); and

   c.   The Department's and OCR's decision to disclose the Applicant Documents and Information and Admissions Documents and Information was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.

## REQUEST FOR A PERMANENT INJUNCTION[3]

45.      The University repeats and incorporates herein by reference the allegations of Paragraphs 1 through 35.

46.      The Applicant Documents and Information and Admissions Documents and Information are exempt from disclosure under FOIA Exemption 4 and the Trade Secrets Act, FOIA Exemptions 6 and 7(C) and the Privacy Act, and the Department's and OCR's decision to disclose these materials was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. Therefore, the University will prevail on the merits of this action.

47.      Release of the Applicant Documents and Information and Admissions Documents and Information will irreparably injure the University by causing it to suffer substantial competitive harm compared to its competitors.

48.      The Department, OCR, the FOIA Requestor, and the public at large will not be harmed by withholding the Applicant Documents and Information and Admissions Documents and Information, and any such harm they would suffer is substantially outweighed by the irreparable injury certain to occur to the University.

49.      The public interest is served by ensuring that the University, and other similarly situated highly competitive universities that are involved in similar investigations, are not subject to having their confidential admissions information and materials disclosed, and are able to cooperate fully with OCR investigations without fear of such disclosure.

---

[3] The Department's regulations provide that disclosure of the subject documents will be held in abeyance during the pendency of a reverse FOIA action. 34 C.F.R. § 5.11(j). Should the Department decide that it will disclose the Applicant Documents and Information and/or the Admissions Documents and Information before this lawsuit is resolved, the University reserves the right to request a preliminary injunction and other appropriate equitable relief.

50. Therefore, the Court should permanently enjoin the Department and OCR from disclosing the Applicant Documents and Information and Admissions Documents and Information.

## **PRAYER FOR RELIEF**

WHEREFORE, Princeton University respectfully requests that judgment be entered against the Defendants United States Department of Education and United States Department of Education, Office for Civil Rights, and that this Court:

A. Set aside the Department's and OCR's decision to disclose the Applicant Documents and Information and Admissions Documents and Information as arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law;

B. Declare that the Department's and OCR's decision that the Applicant Documents and Information and Admissions Documents and Information do not fall within FOIA Exemptions 4, 6, and/or 7(C), and are not protected from disclosure by the Trade Secrets Act or Privacy Act, was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law;

C. In the alternative, remand the action to the Department and OCR for reconsideration;

D. Permanently enjoin the Department and OCR from disclosing the Applicant Documents and Information and Admissions Documents and Information; and

E. Grant such other and further relief as may be just and proper.

Dated: March 17, 2017

Respectfully submitted,

THE TRUSTEES OF
PRINCETON UNIVERSITY


By:   /s/ Lindsay C. Harrison


Thomas J. Perrelli
    D.C. Bar No. 438929
Lindsay C. Harrison
    D.C. Bar No. 977407
Jessica R. Hertz
    D.C. Bar No. 989589
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Phone 202 639-6000
Fax 202 639-6066
Email: tperrelli@jenner.com
         lharrison@jenner.com
         jhertz@jenner.com

*Attorneys for The Trustees of
Princeton University*